## SUPREME COURT.

CARLOS D. WARD, respondent, agt. WM. FORREST, appellant.

Where there is a question of *fraud* presented between the parties, who are *principal* and *agent*, and the evidence tends to establish circumstances by which it might be considered that the defendant acted as *trustee* of the plaintiff, in retaining the property in question, procured by his agency, the plaintiff has the right to go for the fraud alone; and the verdict of the jury on that question is conclusive, especially where the act of *conversion* by the defendant is clearly proved. Although a complaint is drawn without any name to the action, or without mentioning the word "*conversion*" when the whole facts stated as the gravamen, is an action for fraud and conversion, it is too late to raise the question *on appeal*, that the plaintiff cannot recover for the conversion. If there was any difference between the complaint and the proofs, objection should have been taken on the trial.

*Argued Niagara General Term, September,* 1859. *Decided Erie General Term, November,* 1859, *before* GREENE, P. J., DAVIS *and* MARVIN, *Justices.*

APPEAL from judgment entered upon verdict. Exceptions taken at the trial. The facts will sufficiently appear in the opinion.

G. D. LAMONT, *for plaintiff.*
GEO. W. COTHRAN, *for defendant.*

I. The court erred in overruling the objection to the introduction of the deed from defendant and wife to Amos Eastman, in evidence. The deed was executed subsequent to the commencement of this action. The plaintiff must stand or fall by those facts constituting his right of action, which existed at the time of the commencement of his action.

II. The court erred in charging the jury " that if the defendant received the conveyance of the land in payment of the note, and after he returned from Michigan, did not fully and fairly disclose to the plaintiff the fact that he had received the conveyance from said Amos Eastman of said lands, and had given the said mortgage; and if, at the time

he, the defendant, took the said deed and gave the said mortgage, he did so with the intention of not disclosing to the plaintiff the fact that he, the defendant, had taken said conveyance and given said mortgage, but with the intention of concealing the fact from him, and keeping and using the said lands for his (defendant's) own use and benefit, depriving the plaintiff thereof, under pretence that nothing had been paid on said note; then the defendant was guilty of converting the note, and that the plaintiff in that case would be entitled to recover the amount of the note, with interest."

A mere neglect to disclose facts within the knowledge of the agent does not in law amount to a conversion of property. (*M'Morris* agt. *Simpson*, 21 *Wend.*, 610, 614; 2 *Greenleaf on Ev.*, § 642; 3 *Black. Comm.*, 153; 9 *Bacon's Abr.*, 631; *Fouldes* agt. *Willoughby*, 8 *Mees. & Welsb.*, 546, 551; *Bristol* agt. *Burt*, 7 *Johns. R.*, 254; *Clark* agt. *Whittaker*, 19 *Conn.*, 319.)

In *M'Morris* agt. *Simpson*, (*supra*,) Mr. Justice BRONSON says: " There must be some *act* on the part of the agent; a mere *omission* of duty is not enough, although the property may be lost in consequence of the neglect. Nor will trover lie where the agent, though wanting in good faith, has acted within the general scope of his powers. There must, I think, be an entire departure from his authority, before this action for a conversion of the goods can be maintained."

2. Nor does *a mere intention to convert* amount to a conversion. (*Same authorities as last above.*)

3. " A *conversion*, in the sense of the law in trover, consists either in the appropriation of the thing to the parties own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own." (2 *Greenleaf on Ev.*, § 642.)

4. Proof that the defendant did some positive wrongful

or tortious *act* is necessary to support the action of trover. (*Hall* agt. *Robinson*, 2 *Comst.*, 293, *per* JEWETT, J ; *Bromley* agt. *Coxwell*, 2 *Bos. & Pul.*, 438 ; *Ross* agt. *Johnson*, 5 *Burr*, 2825 ; *Severin* agt. *Keppell*, 4 *Esp. R.*, 156 ; *Clark* agt. *Whitaker*, 19 *Conn.*, 319.)

5. And a demand and refusal is necessary to be shown where the defendant legally came into possession of the property. (*Bates* agt. *Conkling*, 10 *Wend.*, 589 ; *Saunders Plead. & Ev.*, vol. 2, *part* 11, 1159 ; 6 *Q. B.*, 769 ; 1 *Sid.*, 264.)

III. The court erred in refusing to charge the jury " that the deed from the said Amos Eastman and wife to the defendant, not being under seal, was inoperative and void, and that the plaintiff cannot, therefore, recover in this action."

1. The deed was utterly void—it not being under seal. (3 *R. S.*, 29, §§ 156-7, *5th ed.*)

2. The *lex rei sitae* governs as to the form and manner of execution of deeds of conveyance of real property. (*Story on Conflict of Laws*, §§ 363, 366, 424, 428, 435, 437 ; *Horsford* agt. *Nichols*, 1 *Paige*, 220 ; *Cutler* agt. *Davenport*, 1 *Pickering*, 81.)

3. The deed being void the defendant acquired nothing under it.

IV. The court erred in refusing to charge the jury " that if the defendant fraudulently represented to the Eastmans that he, the defendant, owned the note in question, and by such fraudulent representations induced Amos Eastman to make the deed in question, and such representations were made at the plaintiffs request, then the plaintiff cannot recover."

Amos Eastman was in no way liable to pay the note. He owned the lands mentioned in the deed. John Eastman was liable on the note, and had no interest in the lands. The plaintiff, owning the note, " employed the defendant to go to the state of Michigan, as his agent, and collect said note ; and that, for the purpose of collecting the same, and to induce said Eastman to pay or secure it, to there repre-

sent that said promissory note then belonged to him, said defendant, and had never been transferred by said defendant to said plaintiff, &c."

If, therefore, the defendant acquired anything under the deed, it was acquired from *Amos Eastman*, and in consequence of such fraudulent representations; and the plaintiff having directed the defendant to practice the fraud, is estopped from claiming anything at the hands of the defendant. The well settled maxim, "*in pari delicto, potior est conditio defendentis*," is directly applicable to this case. (1 *Parsons on Cont.*, 62, 64, 2 *id.*, 280; *Ford* agt. *Harrington*, 16 *N. Y. Rep.*, 285, *per* BOWEN, J.; *Cary* agt. *Hotailing*, 1 *Hill*, 311; *Broom's Legal Maxims*, 572.)

2. Defendant's representing to Amos Eastman that he (the defendant) owned the note, &c., was a fraud. It belongs to that kind of frauds classed under the head of *suggestio falsi*. To constitute a fraud of this class, it is only necessary that there should "be a representation, express or implied, false within the knowledge of the party making it, reasonably relied on by the other party, and constituting a material inducement to his contract, or act." (*Willard's Eq. Jurisp.*, 148; *Adam's Eq.*, 177, 351; *Bull* agt. *Lively*, 4 *Dana*, 370; *Clark* agt. ——, 12 *Peters*, 178; *Evans* agt. *Bicknell*, 6 *Ves.*, 173, 182.)

3. Fraud is any kind of artifice by which another is deceived. (*Willard's Eq. Jurisp.*, 147; *Mad. Ch. Pr.*, 204; *Story's Eq. Jur.*, § 187.)

4. If the defendant practiced a fraud upon Amos Eastman, who owned the lands and made the conveyance, then no title passed to the defendant by the deed. (*Cary* agt. *Hotailing*, 1 *Hill*, 311; *Bristol* agt. *Wilsmore*, 1 *Barn. & Cress.*, 514; *Kirby* agt. *Wilson*, 1 *Ryan & Moody*, 178; *Root* agt. *French*, 13 *Wend.*, 570; *Allison* agt. *Mathiew*, 3 *John. R.*, 235-8; *Vankleef* agt. *Fleet*, 15 *John. R.*, 147, 151; *Buffington* agt. *Gernish*, 15 *Mass. R.*, 156; *Abbotts* agt. *Barry*, 5 *Moor*, 98, 102; *Lupin* agt. *Marie*, 2 *Paige*, 169;

*Andrew* agt. *Dietrich*, 14 *Wend.*, 31 ; *Mowrey* agt. *Walsh*, 8 *Cow.*, 238 ; *Tamplin* agt. *Addy*, 8 *Cow.*, 239, *note* ; *Badger* agt. *Phinney*, 15 *Mars. R.*, 364—*per* PUTNAM, J.; *Irving* agt. *Motly*, 7 *Bing.*, 543 ; 5 *Moor.* & *P.*, 380 *S. C.*)

V. The court erred in refusing to charge the jury, "That what transpired in the state of Michigan, between the defendant and the two Eastmans, and the subsequent delivery of the said deed by Amos Eastman and wife to the defendant, did not, in law, amount to a payment of the note, or a conversion of it."

1. In taking the conveyance to himself the defendant acted strictly within the scope of his authority. If the court should hold that the defendant acquired anything under the deed, then it came lawfully into his possession; and the possession of the agent is the possession of the principal. (*M. Morris* agt. *Simpson*, 21 *Wend.*, 610, 614; *Cairnes* agt. *Bleecker*, 12 *John. Rep.*, 300 ; *Dunlap's Paley on Agency*, 78, *and note* 1.)

2. If the defendant converted the note at all, it was converted after his return to the state of New York. The mortgage shows *conclusively* that the lands were not conveyed in payment of the note. The condition thereof, (and there was no personal obligation accompanying it,) leaves it optional with the defendant to pay for the land, either in money, or in notes and accounts, as therein specified, or to not pay for it at all. Can a mortgage, with such a condition, be regarded as an extinguishment of the note? If it was intended as an extinguishment of the note, why was the note mentioned in it?

It is submitted, as matter of law, that the note did not thereby become extinguished. If it did not, then the court erred in refusing to charge as requested.

VI. The court erred in refusing to charge the jury, "that, under the complaint in this action, the plaintiff cannot recover for the conversion of the note."

The complaint shows that the plaintiff held the note in

his possession at the time the action was brought. Either of the other persons, mentioned in the condition of the mortgage, might prosecute the defendant for a conversion of their demands as well as the plaintiff.

VII. The court erred in refusing to charge the jury, "that the plaintiff cannot recover, in this action, a larger sum or amount than the defendant had received."

As we have already shown, the defendant received nothing, therefore the plaintiff could not recover anything.

At most, the deed from Amos Eastman and wife, to the defendant, and the mortgage from defendant back to Amos Eastman, constituted the defendant but a trustee for the benefit of all the creditors of John Eastman, mentioned in said mortgage.

By the court, MARVIN, Justice. The complaint shows that one John Eastman made a promissory note for $270, dated September 27th, 1856, payable to the defendant or bearer thirteen months after date; that the defendant transferred the note to one Haner, who transferred it to the plaintiff, with a guaranty for value of the payment.

In December, 1857, John Eastman resided in Michigan, and the plaintiff contracted with the defendant, as the agent of the plaintiff, to go with the note to the state of Michigan, and try to collect the note for the plaintiff as the plaintiff's agent; that the defendant went to Michigan as the agent of the plaintiff for the purpose of collecting the note. He called upon John Eastman, and falsely and fraudulently, and with intent to defraud the plaintiff out of the said note, and the moneys thereby secured, pretended and represented to John Eastman that he then owned the note, and with like fraudulent intent caused and procured John Eastman to pay and satisfy the note by a conveyance of land situate in Niagara county, of the value of $1260 and upwards; the conveyance was executed by Amos Eastman, a son of John, at the request and for the benefit of

John, to the defendant, in satisfaction and payment of the note—the conveyance bearing date January 7th, 1858; that the defendant took the deed in satisfaction of the note. About the 10th of January, 1858, the defendant fraudulently, and with the like intent, returned the note to the plaintiff, falsely and fraudulently and with the like intent representing and pretending that he could get nothing on account of said note, and could not get it paid by said John Eastman; and the plaintiff, believing such representations and pretences, took and received from the defendant the note, and still has the same in his possession. The plaintiff states in the complaint the sums he paid the defendant as such agent; that he commenced an action and procured a warrant of attachment against Haner, the guarantor, relying upon said false and fraudulent representations, at great costs and charges, to wit, $50; and relying and believing such false and fraudulent representations, took a journey to Michigan to collect the note of Eastman, at great expense, to wit, $50, and was then first informed of the facts concerning the acts and doings of the defendant in relation to said note.

The plaintiff demands judgment for $450.

The answer was a denial and set-off.

There was a verdict for the plaintiff for $321.92. Upon this trial the plaintiff gave evidence tending to prove the note, as stated in the complaint, and that it was given to the defendant for the purchase price of a pair of horses; and that defendant alleged to the plaintiff that Eastman had been guilty of fraudulent representations in respect to his pecuniary circumstances, in the purchase of the horses, and in giving the note; that plaintiff employed defendant to go to Michigan and collect the note, and to induce Eastman to pay or secure it, to represent that the note then belonged to him, the defendant, and had never been transferred to the plaintiff, and that Eastman had been guilty of fraud, as alleged and stated by defendant, in purchasing

the horses and giving the note; that defendant went to Michigan, and on his return delivered the note to the plaintiff, and pretended that he could not collect it, and represented that he found Eastman among a gang of ruffians, and could get nothing. He proposed to purchase the note of the plaintiff, and offered twenty-five per cent., and soon after the defendant offered fifty per cent. by way of trade for personal property.

Amos Eastman was a witness, and stated in substance that the defendant came to Michigan and informed John Eastman that he had come to collect the note; that the defendant wanted witness to pay or secure the note, and he finally agreed to sell to the defendant the land in Niagara county in payment of the note; that John Eastman insisted on the payment of other debts also, by means of the land; and this was agreed to, and he, witness, deeded the land to the defendant, and took from defendant a mortgage upon the said land; that the defendant claimed that he had the control of the greater share of the demands which John Eastman wanted witness to pay with the land, being some $1200 or $1300; that he got nothing in payment for the land, except payment of said demands against John Eastman; that he owned the land and conveyed it at the request of John Eastman; that he, witness, returned to Niagara county in the fall of 1858, and that defendant had deeded back the land to him. The plaintiff, under objections and exceptions, gave in evidence a quit-claim deed of the land from defendant and wife to Amos Eastman, dated January 8th, 1859. He also gave in evidence the record of a deed from Amos Eastman and wife to the defendant, dated January 7th, 1858; also, the mortgage of the same date from the defendant to Amos Eastman, which contained the following:

"Provided always, and these presents are upon this express condition, that if the said William Forrest shall well and truly pay the said Amos Eastman the sum of

$1210, payable in manner following, to wit: 1st, the said Forrest's note of $294, against John Eastman; 2d, one note in favor of Cole, for about $331.17;" then follow several other notes and claims against John Eastman, "which payments are to be made as soon as the said Forrest can get up said claims—all of which claims are against one John Eastman—not to exceed the term of two years." But in case of non-payment, then follows the power of sale.

The defendant put in evidence the original deed from Amos Eastman to him, and proved that it had no seals upon it when it was presented at the clerk's office for record; that it had seals when taken from the office. The defendant testified that he did not know who put on the seals.

The plaintiff gave evidence tending to show that the defendant took the said deed of said land in payment of said note in Michigan, and that when he took said land in payment of the note, he fraudulently intended to conceal that fact from the plaintiff, and to deprive the plaintiff of the value of the note, and tending to show that after his return from Michigan he tried to persuade one Holmes, a neighbor of the parties, to use his influence with the plaintiff to induce him to sell the note to the defendant for twenty-five per cent. of its face, and that he admitted to Holmes that the note had been paid to him by John Eastman, and that the plaintiff did not know that he had got anything for the note, and desired Holmes to represent to the plaintiff that he would never get anything on his note; also, evidence tending to show that defendant took possession of the land mentioned in the deed from Eastman to defendant, and had possession until he re-deeded to Amos Eastman. He also gave in evidence a paper signed by defendant, dated January 7th, 1858, thus: " Mr. Eastman has settled and paid me, and our matter is arranged. Mr. Eastman has always been considered, in our county, a man that would pay his debts, and I hope you will overlook this

affair. To Mr. J. Mosure." Also, evidence tending to show that the defendant owned no note or demand against John Eastman at the time he went to Michigan, or afterwards.

The court, among other things, charged, "that if the defendant received the conveyance of the land in payment of the note, and after he returned from Michigan, did not fully and fairly disclose to the plaintiff the fact that he had received the conveyance from the said Amos Eastman of said lands and had given the mortgage; and if at the time he, the defendant, took the said deed and gave the said mortgage, he did so with the intention of not disclosing to the plaintiff the fact that he, the defendant, had taken said conveyance and given said mortgage, but with the intention of concealing the fact from him, and keeping and using the said lands for his, defendant's, own use and benefit, depriving the plaintiff thereof, under pretence that nothing had been paid on the note, then the defendant was guilty of converting the note, and that the plaintiff in that case would be entitled to recover the amount of the note, with interest." The defendant's counsel excepted to this charge and every portion thereof.

The jury, by their verdict, affirmed as proved the facts as embraced in the charge. I shall examine the charge, and, if sound, I think there will be no further difficulty in the case.

The charge is not inconsistent with the fact that the defendant was the agent of the plaintiff, and as the agent of the plaintiff had authority to collect the note or to obtain security for its payment. It concedes or assumes such authority. If the defendant took the conveyance *in payment* of the note, and did not disclose to the plaintiff what he had done, but did what he did with the intention of not disclosing the facts, but with the intention of concealing them from the plaintiff, and keeping and using the land for his own benefit, and depriving the plaintiff thereof, then a conversion of the note.

Suppose A has, as agent, a note to collect, or to obtain security for its payment, and calls upon the debtor and takes from him a horse in payment of the note, at the time intending to keep the horse as his own property, and subsequently does keep him, and claim him, and use him as his own, did not A convert the note when he used it in payment for the horse? I put the case when A uses the note in payment for the horse, intending at the time to purchase the horse for himself, and to recognize no interest in the horse in the owner of the note. How does the judge's charge in principle vary from the case supposed?. It includes more circumstances for the jury to find. But it comes simply to this: if the jury find that the defendant purchased the land, on his own account, and for his own use, intending that the plaintiff should have no interest in it legal or equitable, and used the note in paying for land, it was a conversion of the note. And why not? Such a case would come within any definition I can give of conversion. As the defendant, however, was an agent, and had the right, we will say, to do what he did, or rather had the right to obtain payment of the note in any way, what he did do should rather be referred to his agency, and as authorized, and that, therefore, there was no conversion, but that the defendant held the land in trust for the plaintiff. This view might be taken, perhaps, in the observance of the circumstances, or some of them, embraced in the judge's charge.

The jury were required to find certain facts before the law would pronounce the defendant guilty of a conversion of the note, and these facts, when found, show that the defendant had discarded his character of agent, and had determined to act for himself and on his own account, and to use the note as his own.

I think I should have liked the charge better if it had presented the facts referred to as evidence, from which the jury might find the conversion; but I think, upon the facts

embraced in the charge, if stated in a special verdict, the court would be authorized to say, as a question of law, that the defendant was guilty of a conversion of the note.

I do not think there was error in the charge.

The defendant's counsel requested the court to charge several distinct propositions — refusal and exceptions. First, that what transpired in Michigan between the defendant and the Eastmans, and the subsequent delivery of the deed by Amos Eastman and wife to the defendant, did not in law amount to a payment of the note or a conversion of it. Whether it amounted in law to a payment of the note, so far as the plaintiff was concerned, depended upon other facts in the case, the authority of the defendant as agent, and other circumstances. But I suppose the counsel meant that the evidence did not show that the parties understood or intended, that what they then did, should be a *payment* of the note. He refers in his brief to the provision in the mortgage to pay $1200, payable in the manner specified: "first the said Forrest note of two hundred and ninety-four dollars, against John Eastman." This refers to the note in question, and had Forrest then owned the note, there can be no doubt it would have been instantly paid upon the execution of the deed and mortgage. The case also shows that the plaintiff gave other evidence tending to show that the defendant took the deed in payment of the note, and the judge put this as a question of fact to the jury. The request also embraced "or a conversion of it;" the counsel in his points remarks that in taking the conveyance to himself, the defendant acted strictly within the scope of his authority; that it (the conveyance) came lawfully into his possession, and the possession of the agent was the possession of the principal. It may be that the plaintiff had a right to treat the defendant as holding the land for his benefit, but this did not deprive him of the right to seek any other redress which the law gave him,

and if in fact the defendant converted the note, he had his remedy for the conversion.

The court could not have given the charge as requested consistently. It would have embraced only a part of the case. Counsel have no right to select out a portion of the evidence, and call upon the court to declare the law upon it.

I do not think it material to inquire whether the deed, being without seals, was inoperative and void. The defendant, as the jury have found, converted the note, and it is not very material what he got for it; but there can be no doubt that he acquired by the arrangement upon his performing, rights which a court of equity would protect.

There was no evidence calling for any charge relating to fraudulent representations, made by the defendant to Eastman, at plaintiff's request; and then the charge as requested would have been erroneous. The case was put to the jury upon positions and evidence *overriding* all that proposition.

There was a request to charge, that under the complaint the plaintiff could not recover for the conversion of the note.

The complaint says nothing of conversion. It states the facts quite fully, and some facts in reference to which no proof was given, viz: the commencement of an action against the guarantor and the costs, &c., incurred, and also the journey to Michigan, &c. I am inclined to think that the pleader regarded *fraud* as the gravamen of the action. Still I do not think it would have been proper for the court to charge as requested. If there was a variance between the complaint and proofs, the question should have been raised in a different stage of the trial, when the court could have permitted an amendment if deemed necessary. There has been no surprise. The court may now authorize an amendment. But I am inclined to think that the complaint was sufficient to justify the court in giving the case to the jury, upon the law relating to conversion. The pleader does not give any name to his action. He stated

the facts and much that was mere evidence of the facts. None of the exceptions to the refusal to charge are well taken.

An exception was taken to the admission of evidence, viz: the quit-claim deed from the defendant to Amos Eastman, January 8th, 1859. The objection was that it was immaterial and incompetent, it having been executed since this action. It was evidence tending to show that the defendant claimed the land as his own, and did not recognize any right of the plaintiff in it. It tended to show that he purchased the land, not as agent, but on his own account. Suppose he had declared the day before the trial that he owned the land, and that the plaintiff had no interest in it, in law or equity, could not such declarations have been given in evidence, as tending to show the original transaction? Most certainly, not conclusive, but such evidence would be proper.

The judgment should be affirmed.